M’Girk, C. J.,
delivered the opinion of the Court.
The plaintiff was indicted for murder in the Ralls Circuit Court, at the February term, 1830. At that term the prisoner was arraigned and pleaded not guilty. He then applied for and obtained a change of venue to the Boone- Circuit Court. When the cause, came there, the change of venue was deemed incomplete, and the Court of Boone sent the prisoner hack to Ralls Court. At the Feb- term of that Court, 1831, the *51 cause was continued till the first Monday in April, to which time the Court adjourned their general term, to hold a special session in continuance of the term of Feb., at which time the Court opened and amended the record of the change of venue, and sent the prisoner back to Boone county to be tried. At the June term of the Circuit Court for Boone county, 1831, the Court proceeded to try the prisoner, and having a jury empannelled on Saturday evening, the trial was not ended. The Judge made an order to the Sheriff to adjourn the Court till Monday morning, and to proclaim that on Monday a special term of that Court would be holden in continuance of that term to finish the trial of the prisoner; which proclamation was made. On Monday the Court was holden according^, and on Tuesday the trial resulted in a verdict of guilty. Sentence of death was pronounced. The same Monday was the day appointed by law for holding Court in Howard county, by the same Judge. The prisoner has brought his cause to this Court, by a writ of error, and assigns on the record several errors, some relating to the caption of the judgment.
The first is, that it does not appear that the Judge who held the Court, had power to hold that Court, not having been assigned to do so. There is nothing in this objection. The Constitution of the Slate, and the statute organizing the Circuit Courts, are the Judges’ warrant to hold Courts, and take jurisdiction in capital cases.
The second objection is, that it does not appear by the reoord, that a venire issued to the Sheriff of Boone county to summon a jury, nor does it appear who summoned the jury in the case. Some other minor objections were made to the indictment, but were properly abandoned on the argument.
The points assigned for error, and relied on in the argument, are stated as follows, to wit:
First. There was no venire to the Sheriff of Boon a county, to summon the jury that tried the prisoner.
Second. The proceedings of the Ralls Circuit Court, had on the first Monday in April, are void, there being no record of any legal adjournment to that time, and no general law authorizing a Court to be held at the time.
The adjourned term of the Boone Circuit Court at which the prisoner was tried, was held without law, and the proceedings had therein are void.
We will proceed to consider the first point. Is it necessary by the laws of Missouri, that a venire facias should issue to the Sheriff to summon a jury before he can proceed to do so ? Must it appear by the record that a venire was awarded? Mr. King, for the plaintiff) insists that it was in general necessary at common law, that a venire in criminal cases should be made out to the Sheriff before he could summon a jury, and that the award thereof should appear on the record. To prove this, he cites 18 Johnson’s R., 212, and the authorities there cited. We have notgot the book before us, but if we recollect correctly, the decision io, that a venire is necessary in N. Y; though they say they cannot see much use in it at this day. To support the point, the counsel have also cited 1 Chit. Crim. Law, 50, C; 3 Bac. title juras, letter B. 1. These authorities prove, that by the course of proceeding at common law, some of the English Courts did use the venire, and others did not. Both the books say, that Justices of gaol delivery did not use the writ of venire. That Justices of the Sessions used no venire. Chitty says, that it was laid down by Lord Ch. J. Treby, to be the law with regard to Courts of gaol delivery. That before the coming of the Judges, they issued a general command in writing, under their hands and seals, to tire Sheriff, commanding him to return a jury at the time and place of hold-. *52 ing Court; which the Sheriff executed, and his return thereto was, that he had executed the precept with the pannel thereto annexed. 1 Chit. Crim. Law, 515. This pannel is simply filed in Court, and the Sheriff’s name is not signed thereto, and a jury is taken therefrom as necessity may require. Ibid. 507. In tire Courts of Oyer and Terminer, the Justices use no venire, but make their command in writing, under their hands and seals, to the Sheriff to return a jury. 3 Bac. 728, title jury, letter B. X. And in page 729 of that book, it seems the course is to use the venire in the Exchequer and II. B. But in the II. B. if the first venire jailed of effect, the Sheriff made up the deficiency, by the bare yerbal order of the Court. It is further laid down in 1 Chit. Crim. Law, 508, that when the first pannel under the genera! precept is exhausted, the Justices of gaol delivery award a new pannel ore tenus, returnable instanter. This doctrine is supported by a case in Foster’s Reports, 25 and 64. This appears to be the common law doctrine of England, adopled in Missouri in the year 1816. We ask which of those English Courts is our Circuit Court most like, and which is it bound to follow ? We are of opinion it is bound to follow neither of them. We are of opinion that the doctrine of venires as known to the common law, never was the law of this country. The statute adopting the common law, forbids the introduction of all such portions of it as may conflict or bo inconsistent with the statutes of the country then in force. In 1811, the Legislature passed an act, which says, “ the several Courts before whom juries are required, are hereby authorized to direct the Sheiiffs to summon a sufficient number of persons to perform the duties of jurors. The second section provides a penally lo he imposed on persons being summoned and failing to attend. When this statute was passed, the common law was not the law of this land. At that time no question of (Ills kind could arise. The general practice of the Courts was to direct the Sheriff from time to time ore terms, to summon a jury as occasion might require. Thus slood the law and the practice under it in 1816, when tho common law was adopted. The practice still continued tho same, with only a few exceptions, till 1815, the time of the passage of the present jury iaw; and since that we are not aware of any alteration in the practice. The act of 1825 is nparly the same in terms as that of 1811. See Rev. Code, 466. It is an act eniitled an act conccring grand and petit jurors, the first section of which provides: That,the Severn! Courts before whom juries are required, are hereby authorized to direct the respective Sheriffs to summon a sufficient number in persons to perform the duties of jurors. See Revised Code, Laws of Missouri, 466. The act says, the Courts may direct the Sheriff to summon jurors. It does not say how the direction is to be given, whether by an order made of record to stand as a general order, or by a writ under the seal of the Court, called a venire facias, or by an order under the hands and seals of the Judges, or by a bare command ore terms.
We perceive no reason why either of these modes would not be good. If the Judge, sitting in his place as a Judge, gives a verbal order or command to the Sheriff to summon a jury to try a prisoner, the Sheriff is bound to obey. There can he no possible use in having the command entered of record. But it-is argued that there is a necessity to have entered on the record the command to the Sheriff to return a jury, because if the jury should be returned by any other person than the Sheriff, the prisoner might not have an impartial jury returned by an impartial officer, and because in this case it does not appear who returned the jury, it is error. By the jury act of 1825, it is the general duty of the Sheriff to summon juries, when directed by the Court to do so. But by the other statutes, the Courts may direct the Corone-r in eer* *53 tain cases to summon the jury. In this case it appears by the record, that a good and lawful jury came, and in the presence of the prisoner were sworn and entered on the trial. And no objection being made by the prisoner to the returning officer or the array, we must suppose he was satisfied with both. If the fact was that the Coroner returned the jury, or if the Sheriff was not impartial, there is a mode of taking advantage of those things by challenging the array, before the trial is gone into. 1 Chitty 515 and 548. The challenge to the array, for partiality in the returning officer, must be made in writing, ibid. 547. The challenge maybe demurred to and thus become a part of the record, ibid. 548. But every objection io tbe Sheriff, and we presume to every other officer returning a jury, must be taken before the trial commences, and cannot be taken advantage of in arrest of judgment, ibid. 515, 1 Zeack 101. For these reasons we hold no venire is necessary by our laws, consequently none need be awarded on the roll; and if a venire were necessary, yet we would hold that the English entry of “thereupon let a jury come,” is unnecessary where the prisoner pleads not guilty, for by the constitution, the prisoner is entitled to a jury and the award of a venire, or “thereupon let a jury come,” could make his right to a jury trial no more certain nor strong than it would be without it. If it is true, as the prisoner’s counsel conteiid it may be, that some other person than the Sheriff summoned the jury, he has loot nothing, for there was a time when, and there is a mode of taking advantage of that, if it existed, and if the prisoner did not do so, he cannot now avail himself of it. The first point is overruled.
The second objection is that which relates to the adjourned term of the Circuit Court of Ralls county. The prisoner’s counsel did not prosa this point, but seem to consider it conjointly with the third objection. We will take the came course with it.
The third objection is, that the Circuit Court for Boone county couJcl not lawfully hold an adjourned term of the June regular term for that county, on the day It did hold Court, because on that day the law required the 3ame Judge to hold, or to begin to hold, a Court in Howard county. Messrs. Gordon and King for the prisoner contend, that the holding the adjourned term on Monday did interfere with the Court to be holden in Howard county on the same day, and that every thing done therein was void, because they say tbe law had directed the Judge to be at Howard on that day, and to hold Court, and he could not be in both places at the same time 3 and his first duty was to hold Court in Howard. Their argument farther is, that when the law says, Court shall be holden on a certain day in Howard county, it forbids the Judge from holding Court elsewhere on that day.
The Attorney General on the other side, contends, that whether there was an interference or not, this Court cannot know. That the law intends to guard against an interference in fact, and whether that will take place or not, must be left to tbe Judge-to decide, who has a knowledge of the general state of the docket in his circuit. And he farther contends that if there should be an interference in fact, it will not avoid that which was done at the adjourned term. By the 20th section of an act passed by the Legislature the 7th of January, 1825, it is provided, that the Judges of the several Courts hereby established, shall, when necessary from sickness or other unavoidable cause, or for dispatch of business, hold special adjourned sessions of their respective Courts in continuation of any regular term, and for that purpose may at any time in term, adjourn to any day antecedent to the next stated term of such so as not to interfere with other Court tp beholden the *54 and such special adjourned session shall he held accordingly, and be deemed and considered to all intents and purposes a continuation of the regular term, and all process shall be returned, and all persons held to appear accordingly. The Circuit Court of Ralls county, at their February term, 1881, adjourned the Court till the first Monday in April, on which last day no Court was required to he holden by the same Judge, at which time the Court amended the record, as to the change of venue. We cannot see any claim of interference in this matter. This point is overruled. The above 20th section provides for an adjourned' term to he made by the Court in term time, for three general causes: first, if the Judge, during Court, became sick; second, if unavoidable accidents should happen so that the business of the Court cannot go on, and thirdly, if the Court should be of opinion that the dispatch of business he promoted, it may create a special term. In all these cases the Court is made the judge, whether the things authorizing a special Court to be holden, do exist, and when the Court has so decided, and ordered the special term to he holden, all acts done at such special term must be good, whether the Court did right or wrong in deciding that the contingency had arisen ; otherwise the rights of property would rest on no foundation at all. The 21st section of the act provides for other cases than those in the 20th section. The first of which is, that if the Judges do not appear and hold their Court on the first day appointed by law for holding Court, the Court shall stand adjourned from day to day, until the evening of the third day, and if before that time the Judges do not open Court, the Court shall stand adjourned fill the next regular term. These three days are no doubt given to provide against accidents that may befall the Judges in traveling to the place of holding Court. The next case the section provides for is, that when the Court has commenced, if the Judge he unable to be in Court, and shall fail to appear at the appointed timo and hold Court, in that case the Court shall stand adjourned from day to day, until the evening of the third day, unless the Judge within that time shall appear and go on with business; otherwise the Court shall stand adjourned until the next term. The section then provides that it shall he lawful lor the Judges in any of the cases aforesaid, before their Courts shall be finally adjourned as aforesaid, to make an order in writing to the Sheriff of the county, where the Court is to be holden, commanding him to adjourn the Court to the next regular term, or to any day antecedent thereto, as may seem expedient, so as not to interfere with any other Court to be by the Judge holden, which order shall be recorded, &c. That authorized by the 20th section is to he done in Court, except so far as the next section extends the power farther. That authorized by the 21st sec. may be done at any time before the Court day arrives; and when there is no Court in fact, it may be done by anticipation in any of the aforesaid cases. We think the words in any of the aforesaid cases, in the 21st section, refers as well to the cases in the 20th section, as to those in the 21st section. If then, while the Court was in session in Boone, the Judge thereof deemed it expedient for the dispatch of business in that Court to create a special term on Monday following, to he holden there, he had the power to do so, and he might by law send his order in writing to the Sheriff of Howard, to' adjourn that Court to any day antecedent to the next regular term, and if the Judge did do so, there would be no interference. But whether this was done or not, it cannot judicially appear by this record. The Judge, therefore, had it in his power by the act, to push the Howard Court out of the way of holding Court in Boone on Monday. We are, therefore, of opinion, that it is the duty of the Judge to arrange his special terms, so as to give each county a due share of judicial *55 time. And if this discretion is abused wantonly, surely it cannot be a cause for reversing the judgments of the Court; but the Judge would be answerable in person to the country. The special terms are to be so ordered as not to interfere with other Courts, to be holden by the same Judge. In the case before us, what ought the Court to have done'? It appears by the record that when Saturday evening came, the trial was not finished; a jury was charged with the case, the trial not finished, and Court was to be holden on the next Monday at Fayette, in Howard county, by the same Judge. In England, by the old law, the Judge was authorized to employ carts and oxen, to carry with him the jury, until they agreed. This doctrine is not the law of this country. By the 10th section of the 13th article of the State constitution, it is provided, “ that if in any criminal case the jury be divided in opinion, at the end of the term, the Court may in its discretion discharge the jury, and commit or bail the accused. But this is discretionary with the Court. How the fact was in this case we do not know: the jury might have been divided in opinion, or the evidence might not all have been yet given. Suppose this was the case, and many and distant witnesses attending, it would then become the duty of the Court to consider whether any mode was or was not provided by law for such a case. Surely no Legislature, feeling for the interest of country, and willing to do its duty, could fail to provide a remedy for such a case, if they should once happen to think of it. The Legislature have thought of the case, and provided the remedy, which the Judge has applied in this case. The Court could not with propriety nor with justice to the prisoner, witnesses, and jurors, have postponed the Court, till the business of his whole circuit could be got through with; and as the Attorney General has aptly argued, no time could have been fixed upon that might not have interfered with some of the Courts, in some of the counties. If the special Court had been put beyond the week of the last Court in the circuit, yet the Court could not know in advance positively that the business of that Court would not require all the time intervening, till the commencement of the regular circuit again. The Court in this case did nothing more than that which it might lawfully do. But it is argued, that there could be no judicial time in Boone, after the first week had expired,because the,Legislature had positively said, that on the next Monday judicial time should begin in Howard county. It is true that the first part of the act fixing the times of holding Courts, says the Court shall be holden in Howard on the day on which the special Court was holden; but a subsequent part of the act says, if the Judge should be sick, or if any other great unavoidable accident should happen, or if the Judge should clearly see that business would be more despatched at another time,' then if the Judge shall so order it, the Court shall not be then holden, but shall be holden at such other time, which time shall be made public, &c. We cannot see how the failure, the total failure to hold court in Howard county, could possibly prejudice this man. The Court then had nothing to do with his rights, nor with his case. This argument is, that on Saturday night the jury should have been discharged, and that he should have been sent to prison till another term. The Legislature have made the provisions in the act above referred to, to meet exactly such a case as his case was. It is asked by way of argument, if the Judge had made no order postponing the Court in Howard, could the proceedings of the special Court then be lawful ? It is deemed a sufficient answer to say, that by the law and the constitution, the Court had jurisdiction of the case; and having gone lawfully into the trial, it was the positive duty of the Court to finish it in some way, and at some time, unless prevented by overbearing obstacles, *56 though the legislative command to hold Court in Howard, should he entirely unattended to. Any other construction of the will of the Legislature would be to suppose them ignorant of human affairs, and to act and direct without reason or adequate motive. The counsel have cited a case from Peck’s Reports, as being in point. We consider that case unlike the present case, in this, that the act of the Legislature of Tennessee contains no provisions for holding special adjourned terms of Court.
The Tennessee act says the Court shall continue in session till all the business is done or until it shall be necessary to adjourn to go to some other Court. Nothing of this kind is found in our act. The substance of the case is, that the Circuit Court in Tennessee, began a Court in one county and held Court that week, and on Monday of the next week, which Monday was the day appointed to hold Court in another county. The judicial acts done by the Judge on Monday, were holden by the Supreme Court of Tennessee to be void. We do not like that decision, and if our statute were exactly like that of Tennessee, we believe we would object to the reasons and grounds on which the case is made to rest.
Judgment affirmed.
Wash, J., dissents from the foregoing opinion, on the third point adjudged.