State v. Burns.

————o————

STATE OF MISSOURI, Respondent, *vs.* CHRISTOPHER BURNS, Appellant.

1. *Practice, criminal—-Continuances.*—Applications for continuances are addressed to the sound discretion of the court trying the cause, and an appellate court will not interfere, unless such discretion appears to have been used unsoundly or oppressively.

2. *Practice, criminal—Continuances—Affidavits—Due diligence.*—Where an affidavit was filed for a continuance in a criminal cause on the ground of the absence of witnesses, and it appeared that three continuances had been granted, and that the only subpoenas issued were issued on two occasions two days before the cause was set for trial, and the witnesses were not found: *Held,* that due diligence had not been exercised.

3. *Practice, criminal—Continuances—Newly discovered witnesses.*—An affidavit for a continuance, on the ground of the absence of parties discovered to be witnesses just prior to the trial, should be examined with rigid scrutiny.

4. *Practice, criminal—St. Louis county— Venire from the county—How summoned.*—The jury act for St. Louis county is peculiar, and does not contemplate the summoning of a jury from the county, consequently in a criminal cause it is competent for the marshal to summon such a jury, without receiving a list of the jurors from the jury commissioner.

5. *Practice, criminal—Application for change of venue— When applied for.*—An application for a change of venue in a criminal cause comes too late when the cause is called for trial, no previous notice having been given of the proposed application.

*Appeal from St. Louis Criminal Court.*

*C. P. Johnson,* for Appellant.

I. The court erred in overruling the motion for a continuance. The record shows clearly that the defendant has been affected injuriously by being deprived of the evidence which he would have obtained by further continuing the cause. (State vs. Klinger, 43 Mo., 127; McKay vs. State, 12 Mo., 492; McLane vs. Harris, 1 Mo., 700; Riggs vs. Fenton, 3 Mo., 28; Moore vs. McCulloch, 6 Mo., 444; Tunstall vs. Hamilton, 8 Mo., 500; Darne vs. Broadwater, 9 Mo., 19; State vs. Schoenwald, 31 Mo., 147.)

II. The challenge and objections, made by defendant to the entire panel of jurors summoned to try said cause under the special venire ordered by the court, should have been sustained. (Sess. Acts 1855, p. 96, § 17.) The general statute law relative to the qualifications and summoning of jurors does not apply to a criminal cause. (Wagn. Stat., 800, § 23.) The general law, governing courts having criminal jurisdiction in summoning jurors, is set forth in Wagn. Stat., 801, §§ 29, 30, 31, 32; 1102, §§ 7, 8. The provisions of the law relative to St. Louis county are such that the jury commissioner can easily supply such venire as contemplated. (Laws St. Louis Co., p. 217, § 3.)

III. The defendant was entitled to a hearing on his application for a change of venue made to the Circuit Court, and a decision thereon, before being put to his trial. (Laws of St. Louis Co., p. 1, § 2.)

*J. C. Normile*, for Respondent.

I. This court will not ordinarily interfere with the discretion of the lower court in ruling on motions for continuance. (Green vs. State, 13 Mo., 382; State vs. Klinger, 43 Mo., 127; Frederick vs. Rice, 46 Mo., 24.)

II. The Jury Act of St. Louis county (Laws of 1872, p. 214), makes no provision for summoning special juries, hence when a special venire is demanded, the jury must be summoned under the provisions of the general statute.

III. The petition for a change of venue does not disclose when the prejudice of the judge became known to defendant.

There was no reasonable notice to the Circuit Court attorney of the intended application. (State vs. Reed, 11 Mo., 379; Perry vs. Roberts, 17 Mo., 36.)

IV. It does not appear from the record that the Circuit Court ever acted on the application; nor is there anything to show why the Criminal Court should stop its proceedings.

WAGNER, Judge, delivered the opinion of the court.

The defendant, in conjunction with one Barrett, was indicted in the Criminal Court for committing a rape upon the person of one Marie Meurer, a female about fourteen years of age.

At the trial he was found guilty, and sentenced to a term of ten years in the penitentiary. No objections are made to the instructions as given by the court, nor to any other rulings, except as hereinafter mentioned.

The first point raised is, that the court erred in refusing a continuance. The indictment was presented to the court by the grand jury on the 22d day of November, 1872, and on the 27th of the same month the defendant was arraigned, and pleaded not guilty. On the 9th day of December thereafter, the case being docketed and set for trial, the defendant obtained a continuance of the cause to the January term, 1873, on account of the absence of Miller, McCarthy and Grady, who were alleged to be witnesses material for the defense. At the January term, 1873, the defendant obtained a second continuance upon his affidavit, because Miller was absent. This continuance was to the March term of the court. On the 11th day of April, it being of the March term, defendant filed his motion, accompanied by an affidavit, asking for a further continuance.

The grounds set forth in this affidavit were that Miller, Grady, Campbell and Chapman, material witnesses, were absent. This motion was by the court overruled. The case was set for trial on the 12th day of March, and on that day the cause was regularly called up for trial, and at the defendant's request it was laid over till the 8th day of April. The

case was then called on the 11th day of April, when the motion and affidavit for a continuance was made. In the affidavit the defendant states, that on the 10th day of March he caused subpœnas to be issued for the witnesses, Miller and Grady, and on the same day placed them in the hands of the officers; that the officers failed to find the witnesses, and returned the subpœnas accordingly; that when the cause was laid over till April, on the 8th day of that month he caused subpœnas to be again issued for the same witnesses, and that the officer made a similar return. It is then alleged in the affidavit, that both of the witnesses are residents of the city of St. Louis; that Grady resides with his parents, and was in the city till within a few days previous to the time of making the affidavit, and that his absence was but temporary. It is further stated, that after the 8th day of April the affiant was informed, that Miller had gone to Belleville, Ills., and was engaged at work there in a nail mill, and that he had been so engaged for several months without defendant's knowledge or consent.

In reference to Campbell and Chapman it is stated, that the subpœnas were not issued for them till the 8th day of April, when the trial was set for the 11th of that month, but it is alleged, as an excuse for not trying to obtain their attendance earlier, that what they knew about the case was not communicated to the defendant any sooner.

It will be observed, that the first continuance was granted to the defendant simply on his motion, the second was upon affidavit, but does not appear to have been resisted, and a third continuance was then asked for. It was surely necessary, that by the third term the defendant should have used proper diligence to have prepared for trial. Now the cause was set for trial on the 12th day of March, and yet no subpœnas were issued for the witnesses till the 10th day of that month, giving the officer not more than two and, perhaps, but one day in which to hunt up the witnesses. This was absolutely no diligence. Why were not subpœnas issued immediately after the last continuance was granted, in order that

the officers might have sufficient time to hunt up and procure the witnesses? The affidavit admits, that Grady was in the city till within a few days of the issuing of the subpœna; had ordinary diligence then been used, it is evident that he might have been served. As to Miller it is stated, that he had been for several months in Belleville, which is only sixteen miles from St. Louis. Had any inquiry been made, it is manifest that the place where he was at work could have been discovered, and his attendance procured, or his deposition taken. The same remarks will apply in reference to the subpœnas issued on the 8th day of April. As to the witnesses, Campbell and Chapman, they never seem to have been known or heard of till three days before the day set for trial. It is not shown, that their materiality could not have been ascertained at a sooner period. The affidavit as to them came with marks of suspicion. In all the prior proceedings they were never thought of, and a party might postpone a trial indefinitely if the precedent were established, that a continuance would be granted upon the discovery of new witnesses just prior to the trial. We certainly would not be understood as deciding, that no case could be made in which a continuance for such a cause would be improper; but what we do say is, that applications of that kind should be examined with rigid scrutiny.

Again, the only reason, why these two last witnesses were desired, was that they might impeach and contradict certain evidence, which it was anticipated would be given for the State, and which the record shows was not given at the trial. Their presence then would have been useless, and the defendant was not injured by the action of the court, so far as they were concerned.

It is the well settled doctrine, that a motion to continue is addressed to the sound discretion of the court trying the cause, and that an appellate court will not interfere with the exercise of such discretion, unless it appears to have been used unsoundly or oppressively. From all the facts and circumstances shown here, we do not think the court exercised

its discretion either unsoundly or oppressively. It had a right
to presume, and was abundantly justified in presuming, that
the motion was made merely to obtain delay, and hence there
was no error in overruling it.

Second—It is further contended, that the Criminal Court
committed error in impaneling the jury. On the 11th day
of April, the day on which the cause was up for trial, the de-
fendant filed his motion, supported by affidavit, asking that a
special venire be issued for jurors residing outside of the
city of St. Louis, on the ground that the minds of the inhab-
itants of the city were prejudiced against him to such an
extent, that he could not get a fair trial from a panel of the
inhabitants of the city. On the same day the motion was
sustained, and a venire was issued to the marshal for thirty-
six jurors outside of the city to serve upon the trial of the
cause.

When the marshal made his return on the next day, the
defendant then objected, that the panel, as summoned, had
not been delivered to him forty-eight hours before the trial,
and thereupon the court, admitting the validity of the objec-
tion, postponed the trial till he had had the panel in his pos-
session the requisite time.

When the court again assembled the defendant filed his
challenge to the special panel of jurors which he had
prayed for, and which had been granted at his request, on the
ground, that the names of the jurors summoned had not been
furnished to the marshal by the jury commissioner, and that
therefore the entire panel was illegal. This motion the court
overruled.

The jury system for St. Louis county is special and differs
from the general law prevailing elsewhere in the State. By
the Act of March 3d, 1857, to provide a jury system for St.
Louis county, it is made the duty of the jury commissioner,
at certain periods of each year, to obtain and take down the
name and residence of each person qualified for, and subject
to, the performance of jury duty, and to deposit and draw
these names in a certain manner for the purpose of furnish-
ing jurors for the different courts.

This law was evidently intended to equalize jury service as far as possible; it is special in its character, and was only intended to apply to the ordinary requirements of the different courts. It does not appear, that the jury commissioner has any facilities for drawing a jury exclusively from the country, as was demanded in this case. He might not be able to obtain a jury at all, for as the principal population is in the city, the names of most of the jurors must necessarily be included therein, and it might be that all of the county jurors on his list had been previously exhausted. At all events, we are clearly of the opinion, that the law never contemplated, and therefore, made no provision for cases of this kind. The inevitable result then followed, that, when a special venire was asked for, it had to be summoned according to the requirements of the general law. Such was the course pursued.

The only remaining point is the action of the court in refusing to grant a change of venue. The record shows, that the case was called for trial at the hour of twelve o'clock, and the State announced itself ready for trial. The court then took a recess for about one hour. At the expiration of that time, and after the assembling of the court, and when some of the jurors had been called, an attorney for the defendant appeared and read to the court a copy of a record and notification from the St. Louis Circuit Court to the judge of the Criminal Court, stating that there was an application to that court for a change of venue. The certificate of the clerk of the Circuit Court states, that the application had been made to that court, that its consideration had been postponed to another day, and it was ordered, that the judge of the Criminal Court be notified thereof. The judge declined paying any attention to the notice, and proceeded with the trial.

The law does not permit changes of venue from the St. Louis Criminal Court to any other county, but provides, that when any person desires a change of venue from that court, that he shall present his affidavit to a judge of the Circuit,

Court, first giving reasonable notice to the adverse party, and that the judge shall immediately hear such evidence as the parties may respectively introduce, and shall determine the existence or non-existence of the facts stated in the petition for a change, and if he be of opinion that the facts set forth in the petition are true, he shall state the same in writing, and issue his warrant directed to the judge and clerk of the Criminal Court, commanding them to transfer the cause to the Circuit Court. (Laws of St. Louis County [Ed. 1872] pp. 92, 95.)

It must be apparent at first blush, that there is no force in the objections here presented. It was not a reasonable notice to notify the circuit attorney of the intended application just as the trial had commenced, and this court has decided, that an application for a change of venue is properly overruled when not applied for until the cause is called for trial—no previous notice having been given of the application. The application is defective in not stating at what time the supposed prejudice of the judge first came to the knowledge of the defendant, as an excuse for not presenting it sooner. Moreover the law did not justify or direct the Criminal Court to discontinue proceedings till an order was made by the Circuit Court transferring the cause. The order was not made, nor does it appear that the Circuit Court has ever acted upon the application.

We have now examined all the objections raised, and find them entirely untenable. The trial seems to have been fair and impartial throughout. The jury upon sufficient evidence found the defendant guilty, and we have neither the right nor the disposition to relieve him from the penalty of his crime.

With the concurrence of the other judges, the judgment will be affirmed.