THE STATE v. WHITTON, *Appellant.*

1. **Change of Venue**: POWER OF COURT TO LIMIT NUMBER OF WIT-
NESSES. A trial court has the power in a criminal case, by an order
made before-hand, to limit the number of witnesses to be heard in
reference to an application for a change of venue. Such a ruling
comes within the domain of judicial discretion, and an appellate
court will not interfere unless this discretion has been arbitrarily
and abusively exercised; certainly not where the record fails to
show that the defendant had witnesses which he was prevented
by the order from examining.

2. **Continuance.** A second application for a continuance must dis-
close facts showing an honest effort on the part of the applicant to
prepare his case for trial, and legal diligence. If the application is
made on the ground of the absence of a witness who lives in an-
other county, and for whom a subpœna has been but lately issued,
it should show when his residence was ascertained, and how soon
steps were taken to ascertain it.

3. **Verdict**: FAILURE TO FIND ON ONE COUNT OF AN INDICTMENT. When
an indictment consists of two counts, a verdict finding the defend-
ant guilty as to one, but silent as to the other, is a virtual acquittal
as to that count. It would be more regular to enter a *nolle prosequi,*
or to have a finding of not guilty on that count; but the irregu-
larity does not prejudice the defendant, and hence does not warrant
setting aside the verdict.

*Appeal from St. Clair Circuit Court.*—HON. JOHN D. PARK-
INSON, Judge.

*J. L. Smith,* Attorney-General, for the State.

SHERWOOD, C. J.—Defendant was indicted and con-
victed of stealing a steer in St. Clair county. The instruc-
tions were unexceptionable, and were based upon sufficient
evidence. The defendant is not represented in this court
by counsel, so we have examined the motion for a new
trial in the endeavor to discover if any substantial error
has occurred, and will give the results of that examination.

I. The court below did not err in refusing to grant a
change of venue. Witnesses were heard both on the side
of the State and of the appellant, and the court, upon the
evidence adduced, found that the alleged prejudice did not

exist, and that finding was conclusive.  *State v. Sayers,* 58 Mo. 585, and cases cited; Laws 1875, § 1, p. 109.

II.  Nor are we of opinion that it was out of the power of the court to limit beforehand the number of witnesses to six on a side in reference to the pending application for a change of venue, because we regard such ruling as clearly within the domain of judicial discretion, with which, unless arbitrarily and abusively exercised, we should refrain from interfering.  It would be productive of very serious and hitherto unheard of consequences, should the law be so declared by this court as to cut off and preclude inferior tribunals from the exercise of one of the most ordinary functions pertaining to the daily administration of justice. Thus courts ex. gr. limit by previous announcement to that effect, the number of impeaching and of supporting witnesses to a certain number on each side.  *Bunnell v. Butler,* 23 Conn. 65.  In that case it was said that: " It would be absurd to hold that upon an inquiry of that sort, depending, in a great measure, upon the opinion of witnesses, a party has the right to examine as many as he pleases, and that the court and jury are bound to sit and hear them without any power to interfere.  There must necessarily be a limit to such inquiries, and it is for the court to prescribe it."  I confess my inability to distinguish the principle involved in the present case from that involved in the case just cited.  Any other theory of the law would permit, nay, prompt a crafty criminal to block the wheels of both punitive and remedial justice, by using the latest census returns of the county as a fecund course of limitless supply for countless subpœnas, thus securing a continuance under the pretense of securing a change of venue.  And to those who, from long practice at the bar, are familiar with artifices of criminals, such an one will seem neither impossible nor improbable.

But conceding that an applicant for change of venue has the abstract right to summon innumerable witnesses,

1. CHANGE OF VENUE: power of court to limit number of witnesses.

and impose upon the court the unpleasant task of meekly listening, at his good pleasure, to interminably cumulative testimony, still it does not appear that the defendant has been prejudiced by the action of the court, because, from aught that appears, he had no more witnesses to examine than the number brought forward in response to the ruling complained of. A party who insists he is injured by the action of the court, must show in what the alleged injury consists, or else those favorable intendments which the law indulges in respect to the lower tribunals, will, as they ought to, prevail.

III. The next point to be examined is the refusal to grant the continuance defendant applied for. It seems 2. CONTINUANCE. that defendant was arrested in July or August, 1876, for stealing cattle, on affidavit filed before a justice of the peace. His indictment for that offense followed at the next September term of that year. That indictment charged, in its first count, the stealing of an animal belonging to one Shaffner; in its second, the larceny of two head of cattle belonging to one Chevington. The indictment on which defendant was tried, charged in both counts the stealing of the cattle whose owners were to the grand jurors unknown. The first application for a continuance was made at the September term, 1877, when the latter indictment was found. It was filed September 5th, 1877, and was based on the absence of two witnesses, Copeland and Talley, who were then alleged to be residents of St. Clair county, for whose appearance subpœnas were alleged to have unsuccessfully issued on the 23d of August of that year. And in that application it was urged that the State having entered a *nolle prosequi* as to the first indictment, and found a second one, (on the day previous,) which differed from the first, in that it did not allege the names of the owners of the cattle, but charged that those names were to the grand jurors unknown, the defendant was taken by surprise, was not ready for trial, but believed he would be able to procure the attendance of the witnesses

named at the next term thereafter, if a continuance were granted him. The continuance was granted.

At the next term, which commenced on the 4th day of March, 1878, the defendant, on the next day, and immediately upon his application for a change of venue being denied, again applied for a continuance, based, also, on the absence of Copeland and Talley, as well as other witnesses. The State obviated under the statute (*State v. Miller*, 67 Mo. 604), the necessity for the presence of any of the witnesses except Copeland and Talley. As to Copeland, not the slightest pretense of diligence was shown; not even a subpœna issued. It was alleged, however, in the application, that a subpœna had been issued for Talley and sent to the sheriff of Henry county, on the 16th day of the preceding February; that Talley resided in that county, about 20 miles from the place of trial; that the subpœna had not been returned, but that the sheriff of Henry county had, on the night of February 28th, stated to one of defendant's counsel that he sent a deputy that day to serve the subpœna, and if the deputy did not find the witness by the 1st or 2d of March, he himself would go down on the 3d of March to the neighborhood where the witness resided, stay there all night and serve the witness on the 4th of that month. The application then concludes in the usual way, and the only question arising thereon is, has the requisite amount of diligence been exhibited? We think not. The defendant had been arrested and brought before a justice of the peace over a year and a half before for stealing cattle; the same cattle, it may be reasonably inferred, he was, in three weeks thereafter, indicted for stealing.

The indictment then found contained two counts, specified the names of a different owner in each count, and remained pending against defendant for one whole year, or until September, 1877, when the second indictment was found, which differs, as above seen, in no essential particular from the first one, except that the names of the

owners of the cattle are declared to be unknown. The fact that defendant had been unsuccessful in obtaining service on Copeland and Talley six months before, should have stimulated him to greater diligence, to have the witnesses subpœnaed, or to have taken their depositions, anterior to the term at which the second continuance was applied for, but defendant takes no subpœna for Copeland, and none for Talley until some fifteen days before the day of trial. At what time he learned the residence of Talley, we are not informed; and as no presumptions are indulged in favor of applications for continuances, defendant may, for aught that appears to the contrary, have been aware of that residence for months before his trial came on. In a recent case in this court, *State v. Lawther,* 65 Mo. 454, it was ruled that a second application for a continuance must " disclose facts showing an honest effort on the part of the applicant to prepare his case for trial, and legal diligence;" that the application should show when the residence of the absent witness was ascertained, and that immediately, or very soon after the first continuance, inquiries were instituted by letter, or otherwise, to learn where that residence was. Tested by these rules, the application is entirely insufficient, and does not comply with well established legal requirements. Again, the granting of continuances rests very much within the sound discretion of the trial court; which discretion will not be interfered with, unless unsoundly and oppressively exercised. *Bartholow v. Campbell,* 56 Mo. 117; *State v. Hollenscheit,* 61 Mo. 302; *Farmers Bank v. Williamson,* Id. 259; *State v. Sayers,* 58 Mo. 585; *State v. Burns,* 54 Mo. 274.

IV. But one point remains for discussion. It is claimed that the verdict should have been set aside, be-

3. VERDICT: failure to find on one count of an indictment.

cause the jury only found the defendant guilty on the first count, and failed to make any finding on the second. In reference to this it may be observed that the second count was practically abandoned at the trial; no evidence being introduced or

instructions given respecting it.    While it would have been more in conformity with regularity of procedure to have entered a *nolle prosequi* as to that count, or to have found in defendant's favor in regard thereto, yet the failure to find on that count has not prejudiced the defendant, and may be regarded as a virtual acquittal as to the charge therein contained.

Judgment affirmed, in which all concur, except Judge HENRY, who is of opinion that the continuance should have been granted.

AFFIRMED.