FREDERICK VIERLING, Appellant, *v.* CHAS. G. STIFEL BREWING COMPANY, Respondent.

February 12, 1884.

1. SPECIAL JURIES — CHALLENGES — PRACTICE — NEW TRIAL. — A party can not make his challenge to an array of jurors for the first time in his motion for a new trial.

2. —— Objections to the officer who summons a jury must be made before the trial of the cause and can not be raised by motion for a new trial.

3. CONSTITUTIONAL LAW. — The statute which allows either party to have a special jury upon paying the cost thereof does not violate any provision of the constitution or of the bill of rights.

4. —— Such a statute is not void for a failure to prescribe the exact method of summoning the jury; the general law furnishes a sufficient guide as to that.

5. —— In summoning a special jury the sheriff is not bound to follow the rules and usages of the common law relating to the summoning of special or struck juries.

6. —— The statute as to impannelling special juries is merely directory, and a violation of its provisions is not ground for a reversal of the judgment unless prejudice to the appellant is fairly inferable from the circumstances of the case.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Affirmed.*

TUTT & BRECK. JONES, for the appellant: The special jury law (sect. 2802, Rev. Stats. 1879, Mo.) as in practice

in the city of St. Louis, is unconstitutional. — Bill of
Rights sect. 10 ; 2 Lil. Reg. 154 ; 2 Tidd's Pr. 788 ; 3 Bla.
Com. 257 ; *Atty.-Gen.* v. *Goodman*, 8 Price, 220 ; *Rex* v.
*Perry*, 5 Durn. & East, 453 ; *Fulweiler* v. *St. Louis*, 61
Mo. 479 ; *Fine* v. *Public Schools*, 30 Mo. 166 ; *Rose* v. *St.
Louis*, 49 Mo. 509 ; Thomp. & Mer. on Juries, sects. 45–
140 ; *The People* v. *Tweed*, 50 How. Pr. 264 ; *Bird* v. *The
State*, 7 How. (Miss.) 163 ; *Dan'l O' Connell's Case*, 11 Cl.
& Fin. 155 ; *Nashville* v. *Shephard*, 3 Baxt. 373 ; *Hamil-
ton* v. *Fletcher*, 64 Ga. 553.   There is no machinery pro-
vided by which a " special jury " can be selected and sum-
moned. — Sects. 2771, 2802, Rev. Stats. 1879, Mo.   Jury
law specially applicable to St. Louis. — Rev. Stats. 1879,
Mo., p. 1523 ; *The State* v. *Burns*, 54 Mo. 274 ; *The State*
v. *Connell*, 49 Mo. 282 ; *Lincoln* v. *Stowell*, 73 Ill. 246 ;
*Wright* v. *Stewart*, 5 Blackf. 120 ; *Gladden* v. *The State*,
13 Fla. 623.   If the sheriff is to select and summon it, he
and his deputies must take, in open court, the oath pre-
scribed by sect. 2781, Rev. Stats. 1879, Mo. — *Hicks* v.
*The State*, 5 Tex. App. 488 ; *Samchen* v. *The State*, 8 Tex.
App. 45.

BROADHEAD & HAEUSSLER, and C. V. SCOTT, for the re-
spondent : In Missouri it was early held that the practice
of the circuit courts in summoning jurors closely resem-
bled that of the justices of gaol delivery at common law,
and a formal venire was unnecessary. — *Samuels* v. *The
State*, 3 Mo. 68 ; *The State* v. *Jones*, 61 Mo. 232.   Plaintiff,
if he desired to test the validity of the law or the order made
by the court thereunder, should have filed his motion to
quash or vacate the order. — *The People* v. *McKay*, 18
Johns. 212.   The only ground of challenge to the array, at
common law, was the partiality or default of the sheriff, cor-
oner, or other officer making the return. — Coke Litt. 156 b ;
3 Bla. Com. 359 ; *The People* v. *McKay*, 18 Johns.
217 ; Chitty Crim. L. 546 ; Wharton's Crim. L., sect. 2947 ;
*The People* v. *Welch*, 49 Cal. 174.   And does not reach

the competency or qualifications of the panel individually or collectively. — Thomp. & Mer. on Juries, sect. 146 ; *Mitchell* v. *The State*, 43 Tex. 517. Statutory provisions relating to the drawing and summoning juries are generally treated as directory. Irregularities and informalities in such selection and summoning constitute no ground for challenging the array. If the jurors are qualified individually the parties to the suit are not prejudiced. — *The State* v. *Baldwin*, 2 Hun, 379 ; *Rafe* v. *The State*, 30 Ga. 60 ; *Perry* v. *The State*, 9 Wis. 19 ; *Guilworth* v. *Ins. Co.*, 29 La. Ann. 30 ; *Commonwealth* v. *Walsh*, 124 Mass. — ; *The State* v. *Hascall*, 6 N. H. 352 ; *The State* v. *Gut*, 6 Minn. 341 ; *The State* v. *Pitts*, 58 Mo. 556 ; *The State* v. *Knight*, 61 Mo. 373. The sheriff was not bound to take the names in any sequence, but was at liberty to make a selection, and with that selection the court would not interfere unless it was shown that it was made partially or corruptly. — 5 Bacon's Abr. 338 ; *Rex* v. *Wooler*, 1 Barn. & Ald. 193. Should it be, however, considered that the sheriff in summoning a special jury in St. Louis acts under the provisions of the statute, then the statutes in that respect are simply directory, and if there be no objection to the jurors, except that they were not selected in the mode pointed out, the judgment will not be disturbed on that account. — *The State* v. *Knight*, 61 Mo. 373 ; *The State* v. *Pitts*, 58 Mo. 556.

THOMPSON, J., delivered the opinion of the court.

This was an action for damages for negligence. There was a trial before a special jury summoned under section 2802 of the Revised Statutes, and the defendant had a ver dict.

The only errors assigned relate to the overruling of the plaintiff's challenge to the array from which the jury was selected. According to the recitals of the record, on

April 20, 1883, on motion of defendants by their attorney, without notice to plaintiff, the court made the following order:. "It appearing to the court that there yet remains in the hands of the clerk of this court about sixty dollars of the deposit made by defendant under the order for a special jury herein, entered on the 10th day of January, 1883, therefore, on motion of defendant by its attorney, it is ordered by the court that the sheriff of the city of St. Louis do summon a special jury of twenty-four lawful men, merchants and business men of said city, to be and appear in room 2 of this court, on Wednesday, April 25th, 1883, at 10 o'clock a. m. of said day, then and there to serve until discharged." Upon which order, thereafter the sheriff made the following return: "Executed this order of court in the city of St. Louis, this 25th day of April, 1883, by summoning the following parties to appear as jurors before the circuit court on the above mentioned day." Here follow the names of twenty-seven persons, and the return is signed in the name of the sheriff by one of his deputies. The record then proceeds to recite: "And thereafter on the same day the case was called for trial, and twenty-four of said special panel being called, plaintiff duly challenged the array for the reasons : —

"1. That the law under which the jury had been summoned was unconstitutional.

"2. That the said law could not be executed, as it did not prescribe how the special jury should be summoned, and that there was no warrant of law for summoning a jury in the way in which this jury had been summoned.

"3. That the selecting and summoning of said jury by the sheriff was illegal ; and further, that it was the duty of the court to designate a sufficient number of persons to be summoned, and not leave it to the discretion of the sheriff.

"4. That in summoning this said jury, the law, as prescribed, had not been complied with.

"Which said challenge was overruled; to which action of the court plaintiff by his attorney then and there duly excepted at the time."

Among the grounds on which the plaintiff asked for a new trial were: —

"1. The court erred in overruling legal objections made by the plaintiff to the array of the jury, before said jury was sworn.

"2. The jury was improperly and illegally chosen and summoned."

I. In support of this motion for new trial a long affidavit of Isaac M. Mason, sheriff of the city of St. Louis, is filed, setting forth that neither he nor any of his deputies had taken the oath of impartiality in summoning jurors required by section 2781 of the Revised Statutes; and setting forth in detail the manner in which special jurors, when ordered, are selected and summoned by him, and also the manner in which this particular jury was selected and summoned by him. This affidavit was not made by the sheriff until after the judgment had been rendered and the motion for new trial made, and the record does not disclose that the facts stated therein were brought to the attention of the court by the challenge to the array, or in any other manner, before the jurors were sworn, or that they were not known to the challenging party at the time when he made his challenge to the array. It, therefore, follows, that for the purposes, of what we have to decide, it might as well have been left out of the record; for no rule of practice is, better settled than that a party can not make his challenge to an array, or to particular jurors, for the first time in a motion for new trial. Thomp. & Mer. on Jur., sect. 275, subsect. 2; 295, 296. If the affidavit had been presented at the time when the array was challenged, and in support of the challenge, it would have been our duty to consider the legal effect of the facts therein stated. But the rule is well settled that, after verdict, informalities in selecting the

jury will not be heard as a ground for new trial, although they did not sooner come to the knowledge of the party complaining, unless it is made to appear that the rights of the party complaining were substantially prejudiced thereby. *Ibid.*, sect. 295, and numerous cases cited. This principle was early declared in this state with reference to challenges to the array. Thus, in *Samuels* v. *The State* (3 Mo. 68 [1831]), which was a capital case, it was laid down by the supreme court that "every objection to the sheriff, and we presume to every other officer returning a jury, must be taken before the trial commences, and can not be taken advantage of in arrest of judgment." This principle was recognized in 1865 in *The State* v. *Marshall* (36 Mo. 400), another capital case; and in 1875 in *The State* v. *Jones* (61 Mo. 232.) If a challenge to the array can not be made after verdict, it can not be tried after verdict, on facts then for the first time brought to the notice of the court. We have, therefore, to consider whether the grounds of challenge stated in the record present anything which, as matter of law, ought to have required the quashing of the panel.

II. The first of these grounds is that the law under which the jury had been summoned was unconstitutional. The statute referred to is in the following language : —

"Either party to a cause pending in the circuit court, or court of common pleas, or criminal court, of any county and triable by a jury, shall be entitled, as of course, to an order for special venire on motion made therefor, three days before that on which the case is set for trial; but the cost of such special jury shall be paid by the party so applying, irrespective of the result, unless the judge presiding at the trial shall, at the close thereof, or within two days thereafter, certify that the case was one for the trial of which a special jury should have been ordered, in which case the costs of the special jury shall be taxed as other costs against the losing party. This section shall apply to

cities having over one hundred thousand inhabitants, as fully as to all other parts of the State." Rev. Stats., sect. 2802.

It is the duty of a party impugning the constitutionality of an act of the legislature to put his finger upon some provision of the constitution which it violates. We have looked curiously through the plaintiff's brief, to see what provision of our constitution this statute is supposed to impugn. It is supposed, by the appellant's counsel, to violate that provision of section 28 of our bill of rights which declares that "the right of trial by jury, as heretofore enjoined, shall remain inviolate." This, it is argued, guarantees the right to a common jury, except in extraordinary cases, where a special jury was allowed. It seems to be true, as suggested by the learned counsel for the appellant, that originally in the King's Bench, special juries were only allowed in cases of unusual importance. But the later practice of all the courts of Westminster Hall seems to have been to allow them upon a simple application in any civil case, as of course, or at least, in the discretion of the court. *Hall* v. *Perott*, Bald. 123, and authorities cited. The peculiar feature of the statute objected to is that it gives either party the absolute right to a special venire upon moving therefor within a prescribed time, and paying the costs of the same, irrespective of the result of the trial. We can not see any constitutional objection to this statute, unless it be true that the constitution in some way guarantees to a party in a civil suit the right of trial before an ignorant and incompetent jury, such as our common juries in St. Louis often are. A statute limiting jury duty to a particular class of persons, other than freeholders in the country or citizens in a city, who are eligible for this duty at common law, might be unconstitutional. It has been so held with regard to statutes limiting jury duty to white persons. *Strauder* v. *The State*, 100 U. S. 303. But the statute under consideration contains no such limitation. It does

not require that a special jury should be summoned from
merchants and business men, or from any other class of
men in the community. Nor does it, in any manner, pre-
scribe what the qualifications of special jurors shall be. If,
in executing the statute, the sheriff summon only mer-
chants within a given radius in the city, and if this were
brought to the attention of the court as a ground of
challenging an array of jurors, and such ground of chal-
lenge were disallowed and an exception properly saved,
the question would be one which would have to be care-
fully considered. But it would not involve the constitution-
ality of the statute; it would only go to the propriety of
the manner in which it had been executed. But here, as
already pointed out, nothing specific in regard to the man-
ner in which this special jury was selected by the sheriff
was brought to the notice of the court until the hearing of
the motion for new trial.

It is also suggested that the feature of the above statute,
which provides that the costs of the special jury shall be
paid by the party applying for it, is in conflict with sec-
tion 10 of our bill of rights, which provides that " right
and justice shall be administered without sale." We do
not see the force of this suggestion. At common law, as
we understand it, every suitor purchased his writ, and paid
the costs of every ministerial act done at his request, as
the cause proceeded. And if he were successful in the
suit, he recovered these costs from the opposite party.
We are not aware that it was ever supposed that this prac-
tice amounted to a sale of justice. The sale which
*magna charta*, and our bill of rights following its lan-
guage, denounced, was the taking of bribes and the
extorting of illegal fees; not the payment of lawful
compensation, for acts done at the request of a party, by
the ministerial officers of a court in the progress of a litiga-
tion. But it is seen by the reading of the statute under
consideration, that the obligation of the party demanding

a special jury, to pay the costs of the same, irrespective of the result, is not an absolute one ; the judge may, at the close of the trial, or within two days thereafter, certify that the case was one for the trial of which a special jury should have been ordered, in which case, the costs of the special jury are to be taxed, as other costs, against the losing party. The provision taxing the party demanding such a jury with the costs, irrespective of the result, unless the judge should direct otherwise, is intended merely as a check against the demanding of such juries in cases where they are not required.

III. The next ground of challenge was, "that the said law could not be executed, as it did not prescribe how the special jury should be summoned, and that there was no warrant of law for summoning a jury in the way in which this jury had been summoned." It is perceived that this paragraph really embodies two grounds. We do not think that the former of them is well taken. As to this ground, if the statute does not prescribe the manner in which it is to be executed, it may be executed according to the established practice of summoning additional panels when the regular panel has been exhausted, as provided in section 2788. Or, if it be possible that this section does not afford a proper guide, then, clearly the established practice of courts of the common law as to the mode of selecting and summoning special juries may be resorted to. A statute which simply gives or regulates a remedial right which existed at common law, can not be held to be void because it does not prescribe in detail the mode of procedure by which it is to be executed ; for the common law furnishes a sufficient guide as to that.

The second branch of this ground of challenge really belongs to the third ground of challenge, which we shall now consider.

IV. The third ground of challenge was that the selecting and summoning of said jury was illegal ; and further,

that it was the duty of the court to designate a sufficient number of persons to be summoned, and not to leave it to the discretion of the sheriff. No rule of the common law has been pointed out to us which made it the duty of the court, in case a special jury were ordered, to furnish the names from which the jury should be struck, though unquestionably, the selection of such a jury was never left to the mere discretion of the sheriff, as was the selection of a common jury. Such an objection to the mode of selecting a common jury would be of no avail, either at common law, or under the statutory practice in this state, which followed the practice of the common law. In 1811 the legislature of this territory passed an act which prescribed that "the several courts before whom juries are required, are hereby authorized to direct the sheriff to summon a sufficient number of persons to perform the duties of jurors." Under this statute, it is said that "the general practice of the courts was to direct the sheriff, from time to time, *ore tenus*, to summon a jury, as occasion might require; and this practice was unquestionably in conformity with the early practice of the English courts of common law. Thus stood the law and practice under it in 1816, when the common law was adopted. The practice still continued the same, with only a few exceptions, until 1825," when another jury law was passed in nearly the same terms as the law of 1811. *Samuels* v. *The State*, 3 Mo. 68, 71, per M'Girk, C. J. This mode of simply directing the sheriff to summon the persons required to serve as common jurors was not only not contrary to the common law, but, on the contrary, that was the only mode of summoning common jurors known to that law. That officer performed the entire function of selecting the panel and of bringing the persons composing it into court. This being so, originally, the partiality or "unindifferency" of the sheriff was the only ground for challenging the array. Co. Litt. 156 b.

But it was not so in the case of special juries. The selection of the panel from which a special jury was to be struck seems never to have been confided, at common law, to the uncontrolled discretion of the sheriff, as in the case of common juries. On the contrary, one of the reasons for adopting the system of special or struck juries, was to take away this discretionary power of selection from the sheriff, and to afford a safeguard against his partiality ·or unindifferency, in cases where, according to Blackstone, he " was suspected of partiality, though not upon such apparent cause as to warrant an exception to him." 3 Bla. Com. 357.

The practice of selecting a special jury at common law was, it must be conceded, entirely different from the practice which was adopted in the case at bar. The manner of selecting or " striking" such a jury at common law, is thus stated in an old book of practice, which appears to have been a book of authority in its time : " In cases where it is conceived an indifferent jury will not be returned between the parties by the sheriff of the county where the venue lies, the court, upon motion, will order the sheriff to attend the secondary of the office, with his books of the freeholders of the county where he is sheriff, and the secondary, in the presence of the attorneys of both sides, to strike a jury ; but there must be probable matter shown to the court why an indifferent jury may not be had, else the court will make no such rule. Upon a motion and an affidavit made in court, that the cause to be tried at the bar is a cause of very great consequence, the court will, if they see cause, make a rule for the secondary to name forty-eight freeholders, and each party to strike out twelve, by one at a time, the plaintiff or his attorney to begin first, and the remaining twenty-four shall be the jury to be returned for the trial of the cause." 2 Lilly's Register, 155. Substantially the same method is detailed in 2 Tidd Pr. 787. See, also, Trials per Pais (Duncombe on Juries,

anno 1725), 84; *King* v. *Wooler*, 1 Barn. & Ald. 193. This is in conformity with what was laid down in a case in Salkeld (about anno 1690). It is stated that a rule was made in the King's Bench, Trinity term (8 Will. III.), that "when the master is to strike a jury, namely, forty-eight, out of the freeholder's book, he should give notice to the attorneys of both sides to be present, and if one comes and the other does not, he that appears shall, according to the ancient course, strike out twelve; and the master shall strike out the other twelve for him that is absent." *Anon.*, 1 Salk. 405. The twenty-four remaining after twenty-four had been stricken out were summoned, and from this number, if enough attended, the jury which tried the cause was selected.

In 1825 the subject was regulated in England by an elaborate statute known as the jury act (6 Geo. IV., ch. 50, sects. 30–36), the leading features of which, so far as it relates to special juries, were that a special jury list was to be made out, composed of every man in the county "who should be described as an esquire or person of higher degree, or as a banker or merchant;" that all the names on the list, written on cards, were to be put into a box and shaken up, out of which forty-eight names were to be drawn, and these should be summoned as the panel from which the jury was to be selected.

The special jury law relating to the city of St. Louis contains no provision for the selection of special juries. The section of the Revised Statutes (sect. 2802), under which the special jury in the case under consideration was summoned, in terms applies to cities having more than one hundred thousand inhabitants; and it was the manifest intention of the legislature that it should apply to St. Louis, any provisions of the special jury law applicable to this city to the contrary notwithstanding. But, as was said in the case of *The State* v. *Burns* (54 Mo. 274, 279, 280), it does not appear that the jury commissioner of the city of

St. Louis has any facilities for the drawing of a special jury; and, accordingly, where a special jury is ordered, it must be selected, not according to the requirements of the special jury law relating to St. Louis, but according to the requirements of the general law.

The question, therefore, is, what are the requirements of the general law in regard to the selection of special juries? The statute itself is silent upon the question. It simply provides that "either party to a cause pending in the circuit court, the court of common pleas, or criminal court of any county, and triable by jury, shall be entitled, as of course, to an order for special venire, on motion made therefor three days before that on which the case is set for trial." Rev. Stats., sect. 2802. The decisions of our supreme court do not throw any special light upon this inquiry. The special venire to which, in several cases, it was held the plaintiff was entitled, appears to have been an order in the nature of a writ of *venire facias*, directing the sheriff to summon jurors from the body of the county outside of the limits of the city, the action being an action against the city, and the inhabitants of the city being incompetent. *Fine* v. *St. Louis Public Schools*, 30 Mo. 166; *Rose* v. *City of St. Charles*, 49 Mo. 509; *Fulweiler* v. *City of St. Louis*, 61 Mo. 479. The special jury which was summoned in the case of *Union Savings Association* v. *Edwards* (47 Mo. 445), was summoned under the provisions of a statute which had long existed in this state, and which appears to have been superseded by the statute now under consideration. That statute read as follows: "All courts of record in which juries are required shall have the power to order a special jury of twenty-four for the trial of any civil cause; and, when ordered, the sheriff shall summon them according to the order of the court, and make out and deliver to each party, or his attorney, a panel of the jury so summoned." 1 Wag. Stats., p. 800, sects. 23; Gen. Stats.

1865, ch. 146, sect. 23; Rev. Stats. 1855, ch. 88, sect. 24. The case last cited does not throw any light upon the question, because it does not appear from the report in what manner the special jury which was impannelled to try that case was selected. Wagner, J., after referring to the statute last cited, said: "The special panel may be ordered in the discretion of the court, and there is nothing disclosed here tending to show that the discretion was unwisely exercised. The mere objection is not sufficient; there must be something to show that the party was prejudiced or injured by the action of the court." The special venire which was assembled in the case of *The State* v. *Burns* (54 Mo. 274), which was an indictment for a felony, was simply a venire of thirty-six jurors which the court ordered the sheriff to summon from the body of the county outside the city of St. Louis, upon the defendant's motion, supported by affidavit, showing such a prejudice against him among the inhabitants of the city that he could not get a fair trial from a panel of the inhabitants of the city. These decisions leave the question quite unsettled what the legislature meant in section 2802 of the Revised Statutes, in granting to a party, as of course, the right to a special venire on motion made therefor. In the absence of any direct adjudication upon the question in this state, the counsel for the respondent in this case have suggested the following solution of the question, in the learned printed argument which they have filed: —

"It would seem that the duties of the sheriff, in returning a special jury in St. Louis, are practically the same as were those of the sheriff in returning such a jury at common law. The jury commissioner of St. Louis, having no facilities for drawing such a jury, and his duties relating exclusively to the drawing of 'ordinary jurors,' it necessarily devolves upon the sheriff, in the fulfilment of the order of the court for such a jury, to select and summon such jury

according to such rules and practices as, in the absence of statutory directions, were established, followed, and approved by the course, holdings, and usages of the common law.''

The special jury in this case was clearly not selected according to the '' course, holdings, and usages of the common law.'' This is shown by the manner in which special juries were selected at common law, as stated in the argument of the learned counsel for the respondent, which is substantially the same as that already set out. The vice of the mode of selection adopted in this case is, that it commits the whole matter to the unrestrained discretion of the sheriff and his deputies, with the single exception that it requires them to make their selection from '' lawful men,'' and from a particular class of lawful men, namely, '' merchants and business men.'' Under such a system of selection, the chief safeguard of the special jury of the common law is broken down. A partial sheriff, or a corrupt deputy, might pack a jury in the interests of a party, a result against which his right of peremptory challenge and of challenge for cause might prove ineffectual. The leading principle in the selection of a special jury at common law was, that the selection was made from a general list which the sheriff brought into court. It was made in the presence of the court, by the parties themselves, presumably under the direction of the court; but under our present statute, as executed in this case, the sheriff may summon such merchants and business men as he pleases, and excuse such as he pleases, so that he have twenty-four before the court on the day set for the trial. The present statute does not even require, as did the former statute, that he shall '' make out and deliver to each party, or his attorney, a panel of the jury so summoned.'' The party confronts, for the first time when his case is called for trial, an array of twenty-four men, presumably merchants and business men, of whom he may know nothing except what he may learn from an examination on the *voir dire*. This, it is seen, is

not the special jury of the common law, but it is almost exactly the reverse of the special jury of the common law. The common law gave a party the right to a special jury, in order that he might not be obliged to select a jury from a panel assembled by the uncontrolled discretion of the sheriff. Our statute, as here executed, gives either party a right to oblige the other party to submit to the selection of a jury from a panel assembled from a particular class of citizens, according to the uncontrolled discretion of the sheriff, summoning whom he will, and excusing whom he will.

But yet, feeling as we do, the full force of the foregoing suggestions, we have been unable to bring our minds to the conclusion that the legislature, in passing the statute in question, intended to revive in this state the special or struck jury of the common law. So far as we know, that mode of selecting special juries has never been practised in this state, and the profession are strangers to it. No reported decision in this state that we have been able to find, refers in terms to such a jury, although, for aught we can see, our previous law relating to special juries was, equally with the present law, susceptible of the construction that the special jury of the common law was intended. We feel all the difficulties of the question; but at the same time we feel that if we were to hold that the present statute intends the special jury of the common law, we should introduce a novelty into the practice which was not in the contemplation of the legislature.

V. We have not made the foregoing observations because they were necessary to the decision of the case; we have made them because we thought that it might be useful to direct public attention to the state of the law upon this question. In any view which may be taken of the question, it does not follow that the judgment in this case ought to be reversed. It is the settled doctrine of the supreme court of this state that statutes relating to the impannelling of juries

in criminal cases are directory merely; and that the fact that such statutes have been disregarded will not be a ground of new trial, unless some prejudice to the defendant be inferable from the circumstances of the case. *The State* v. *Ward*, 74 Mo. 253, 256; *The State* v. *Breen*, 59 Mo. 413, 417; *The State* v. *Pitts*, 58 Mo. 556; *The State* v. *Bleekley*, 18 Mo. 428. If this is the rule in criminal cases, even in capital felonies, for stronger reasons, it must be regarded as the rule in civil cases. Applying this rule to the present case, no prejudice to this plaintiff growing out of the manner in which the special jury was selected and summoned can be inferred from the circumstances. It is not charged that the sheriff or his deputies who selected and summoned the panel were guilty of any partiality, unindifferency or improper conduct. There is not a line or a word in the record which indicates that the jury which actually sat upon the trial was not composed of fair-minded men, well qualified to discharge the duties required of them in the particular case.

It follows that the judgment of the circuit court must be affirmed. All the judges concur.