## THE STATE v. WARD, *Appellant.*

1. **Continuance.** Whether to grant a continuance is a matter resting largely in the sound discretion of the trial court.

2. **Indictment for Homicide:** VARIANCE. Upon a trial for homicide, proof that the death occurred twelve hours after the wound was inflicted and on the same day, will support an indictment which charges that defendant inflicted the wound on a day named, and that of said wound the deceased "did then and there instantly die."

3. ———: ———. Even if there be a variance between the time of a homicide alleged and that proved, it will be no ground for acquitting the defendant or reversing the judgment, unless there is a finding by the trial court that the variance is material to the merits of the case and prejudicial to the defendant's defense.

4. **Practice, Criminal:** OBJECTIONS TO THE JURY. To avail himself of any error or irregularity in the selection and empaneling of the jury, the defendant must make timely objection. If he delay till after verdict it will be too late. Even when taken in time, such objections will be disregarded, unless it appear that defendant has suffered some prejudice.

5. ———: INSTRUCTIONS, HARMLESS ERROR. If there is no evidence of any sort of provocation, the giving of an instruction which erroneously defines the provocation which will produce that heated state of the blood which the law calls "passion," will not entitle the defendant in a murder case to a reversal of a judgment of conviction.

6. **Insanity.** The evidence in this case furnishes no basis whatever for an instruction in relation to insanity.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*G. S. Van Wagoner* and *A. W. Alexander* for appellant.

*D. H. McIntyre,* Attorney General, for the State.

SHERWOOD, C. J.—The defendant appeals to this court, having been convicted in the trial court of murder in the first degree. Annie Lewis is the name of the person he is charged with having murdered.

### I.

The ruling was correct which denied defendant's mo-

tion for a further continuance. He had previously obtained two continuances, and the third application disclosed none of that diligence which the law requires. The cause was set for May 17th, 1880, yet notwithstanding the fact of two continuances having been granted, no steps were taken and no subpœnas issued preparatory to the coming trial till May 10th, but one short week before the trial above mentioned. All of the witnesses named in the application appear to have resided in St. Louis at the time of defendant's arrest in 1879, and their residence was then known to him, and earlier movements should have been taken to have secured their attendance. What one of the witnesses would have sworn was admitted by the circuit attorney; it was agreed by him that the absent witness, Dick Jenkyns, would swear, if present, that at the time of the killing, and for many days next prior thereto, the defendant was in an unsound state of mind ; that his talk was wild, incoherent, irrational; that his conduct during all of said time was utterly different from his ordinary conduct; that it indicated a total lack of purpose and of care for himself or of aim or regard for his future; that his mind seemed to be in a tumult; that it was so disordered and unsound that he was unable to control his thoughts, his talk or his conduct, and did not reflect upon or distinguish between right and wrong, and was not responsible in morals for his language or his acts. The other absent witnesses were expected to establish the same things, and yet so little importance was attached by defendant's counsel to the agreement of the circuit attorney, that the admission he made as to what Jenkyns would swear was not, as it might have been under the statute, offered by the defendant in evidence.

So frequently has this court passed upon the question of propriety of refusing a continuance in criminal cases, that it is unnecessary to do more now than to refer to some of our former adjudications where similar applications were unsuccessful, and to say that granting a continuance

rests largely in the sound discretion of the trial court, a discretion not to be interfered with unless unsoundly exercised; and to say further, that the measure of diligence which the law imposes on one arrested on a criminal charge remains in this instance unfulfilled. *State v. Lawther*, 65 Mo. 454; *State v. Able*, 65 Mo. 357; *State v. Simms*, 68 Mo. 305; *State v. Lange*, 59 Mo. 418; *State v. Whitton*, 68 Mo. 91; *State v. Hollenscheit*, 61 Mo. 302; *State v. Sayers*, 58 Mo. 585; *State v. Burns*, 54 Mo. 274.

## II.

There was no variance between the allegation as to the homicide and the evidence offered in support of the allegation. The indictment alleges the assaulting and mortal wounding of Annie Lewis, with a pistol, occurred on the 31st day of August, 1879, and that of "said mortal wound the said Annie Lewis did then and there instantly die." The words " then and there " refer to the date already mentioned, and have the same effect as if the date were actually repeated. Whart. Crim. Plead. and Prac., § 131, and cases cited. The evidence shows that death ensued twelve hours after the shooting and on the same day the shooting occurred, thus fully supporting the charge in the indictment. The word "instantly" may be rejected as surplusage. And under our statute even had there been a variance between allegation and proof "in the name or description of any matter or thing whatsoever," " named or described," in the indictment, such variance would be no ground for acquitting the defendant or for reversing the judgment, "unless the court before which the trial shall be had, shall find that such variance is material to the merits of the case, and prejudicial to the defense of the defendant." R. S. 1879, § 1820; *State v. Wammack*, 70 Mo. 410.

Besides all that, time is not of the essence of the offense in a case of this sort, and where this is so the validity of the indictment cannot be questioned, nor the judgment thereon be stayed, arrested or in any manner affected

because the date of the offense is omitted.   Our statute is express on this point.   R. S. 1879, § 1821 ; *State v. Wilcoxen*, 38 Mo. 370 ; *State v. Stumbo*, 26 Mo. 306.   And by the terms of the section just cited the validity of an indictment cannot be overthrown, nor a judgment based thereon be stayed, etc., "for want of the averment of any matter not necessary to be proved."   If it be not necessary to allege any date at all, then certainly not necessary to prove one, nor material if a date different from that alleged be proved. *State v. Magrath* 19 Mo. 678.

### III.

It was too late after verdict to object for the first time to those who composed the trial jury.   In order that a defendant may avail himself of any error or irregularity, any want of compliance with proper methods of procedure in the selection and empaneling of the jury, his objections and exceptions must be timely ones.   *State v. Marshall*, 36 Mo. 400.   Moreover, this court has repeatedly held statutes in respect to the empaneling of juries in criminal cases directory, and that it will refuse in any event to interfere unless some prejudice to the defendant from a lack of compliance with statutory provisions be inferable from the circumstances.   *State v. Breen*, 59 Mo. 413 ; *State v. Pitts*, 58 Mo. 556.

### IV.

We come now to the instructions—and first, as to that given on the part of the State in reference to the word " deliberately."   This in the instruction under consideration was stated to mean in a cool state of the blood, not in that heated state which the law denominates "passion," and the passion here meant is not that which comes of no cause; but that, and that only, which is produced by some lawful provocation.   This instruction is almost identical with that given in the *State v. Kotovsky*, *ante*, p. 247, and, though not in accord with recent decisions of this court,

could not have worked the defendant any hurt, since there was no provocation at all, either lawful or otherwise, nothing of that nature which could reduce the offense from murder in the first degree to some lower grade of homicide. For this reason the error was harmless. For this reason also an instruction regarding murder in the second degree would have been erroneous. *State v. Talbott*, 73 Mo. 347; *State v. Patterson*, 73 Mo. 695; *State v. Kotovsky, ante*, p. 247; *State v. Erb, ante*, p. 199; *State v. Hopper*, 71 Mo. 425; *State v. Schoenwald*, 31 Mo. 147; *State v. Ellis, ante*, p. 207.

It is urged that the court erred in refusing an instruction to the jury as to insanity. The defendant testified in his own behalf as follows: "After repeated promises of Annie Lewis to marry me she refused to keep her promise of marriage with me, whereupon it made me wretched and worthless; my life became a mist to me; I was literally drawn up; I did nothing principally but knocked around town. On the Saturday of the killing of Annie Lewis I had started to work at unloading steamboats. The pistol is my brother's. I don't remember much about it, that day —it's like a dream. Something I think I can remember— my brother that day asked me to hold his clothes; his pistol was in his pocket and I took it out. I never owned a pistol After Annie's last refusal I drank whenever I had money. I remember nothing that happened during that night that Annie was shot. I don't remember having seen the persons who have testified. The first remembrance is of a man who came into the station Sunday morning and asked me if I wanted something to eat. He told me what I was in there for, that I shot a girl." This was all the evidence introduced having the remotest bearing on the question of insanity. We have no hesitation in saying that this evidence furnishes no basis whatever for an instruction on that subject. That the defendant went to the locality pointed out by the testimony with the design of committing the crime of which he now stands convicted, no one can doubt who reads the record. His determina-

tion to perpetrate the offense is shown in the clearest possible manner. He provides himself with a pistol; he proceeds to the locality where his intended victim may be found; he induces her to come out of the house to where he is; he engages her in conversation; when within three feet of her he shoots her through the body; when his victim falls, to make sure of his murderous purpose, he fires his pistol at her again; turns, runs to the hallway, there stops running, throws his pistol down and walks out to Market street, where his arrest soon after occurs. No case can be found in the books which furnishes a better illustration of that solemn legal phrase, "A heart regardless of social duty and fatally bent on mischief." The judgment is affirmed. All concur.