THE STATE v. JACKSON, *Appellant.*

1.  **Criminal Law : MURDER.** The evidence in this case, which was a trial on an indictment for murder in the first degree, reviewed and *held* to justify the court in refusing to sustain a demurrer to the state's evidence.

2.  **Criminal Practice : JURORS.** An objection in a criminal case that a qualified juror was excused or excluded from serving without legal reason, appearing for the first time in a motion for a new trial, there being no pretense that the jurors who tried the case were not qualified, comes too late.

*Appeal from Saline Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*Boyd & Sebree* for appellant.

(1) The evidence offered by the state showed that the killing of Dodson by defendant was in defense of defendant's person from an assault made upon and danger threatened to defendant by one Dick Green, while deceased was holding defendant; and it was the duty of the court to have directed the jury, at the close of the state's evidence, to return a verdict of not guilty, as requested by defendant. Wharton's Prac. and Plead., secs. 708, 812, 813 ; *State v. Daubert*, 42 Mo. 245. (2) The first and second instructions for the state should not have been given. The evidence of the state showed that there was no deliberation and no malicious intent, so that if there was any crime it was manslaughter and not murder, and the court should have instructed for manslaughter in second and third degrees. R. S. 1879, secs. 1243, 1244 ; *State v. Branstetter*, 65 Mo. 154 ; *State v. Hill*, 69 Mo. 451 ; *State v. Ellis*, 74 Mo. 207 ; *State v.*

*Umfried*, 76 Mo. 404; *State v. Jones*, 64 Mo. 391 ; *State v. Green*, 66 Mo. 631; *State v. Foster*, 61 Mo. 550 ; *State v. Rider*, 95 Mo. 474. (3) The instruction for manslaughter in fourth degree should not have been given. If there was any crime, it was manslaughter in either second or third degree. R. S. 1879, secs. 1243, 1244. (4) Under all the evidence the verdict should have been for acquittal. While the different witnesses appear to differ in reference to particulars of the occurrence, yet when all the evidence for the state is considered, it clearly appears which witnesses were right, and that the killing was in self-defense.

*B. G. Boone*, Attorney General, for the State.

(1) Appellant did not complain of the excusing or exclusion of Davidson from the array until after verdict. Objections to the summoning or empaneling of jurors must be made at the time. *State v. Collins*, 86 Mo. 245. Even when taken in time, such objections will be disregarded unless it appears that defendant has suffered prejudice. *State v. Ward*, 74 Mo. 253. (2) Instructions were given for murder in the first and second degree, manslaughter in the fourth degree and other formal instructions required to be given in criminal cases. From the simple act of killing the law presumes murder in the second degree. *State v. Gassert*, 65 Mo. 352, and cases cited. The intention to kill, which is of the essence of murder in the second degree, clearly appears from the evidence in this case. *State v. Gassert, supra.* The giving of any instruction in this case for a grade of homicide lower than murder in the first and second degree was erroneous. As defendant was not convicted of any grade of manslaughter he will not be heard to complain. *State v. Dunn*, 80 Mo. 681. (3) Where it is sought to contradict a witness by the contents of a writing signed by him he cannot be asked as to statements

which counsel may suggest are contained in such writing, but the instrument itself should be put in evidence. *State v. Matthews*, 88 Mo. 121, 125; 1 Greenl. Ev. (14 Ed.) sec. 463. (4) The action of the trial court in overruling the demurrer to the evidence was proper. This court will not reverse a judgment because it is against the evidence, unless there is a total lack of evidence or it fails so completely to support the verdict that the necessary inference is that the jury acted from prejudice or partiality. *State v. Musick*, 71 Mo. 401; *State v. Warner*, 74 Mo. 83; *State v. Johnson*, 81 Mo. 60. (5) The law in regard to the empaneling of jurors is directory. If the record shows that the trial panel was qualified and it does not appear that defendant was prejudiced, he will not be heard to complain because the court, without cause, excused or excluded from the array certain persons before the trial panel was selected. Thomp. & Mer. on Juries, sec. 259; *State v. Matthews*, 88 Mo. 121; *State v. Gleason*, 88 Mo. 582; *O' Brian v. Iron Works*, 7 Mo. App. 257; *Ochs v. People*, 14 West. Rep. 679.

NORTON, C. J.—At the September term, 1887, of the Saline county criminal court, defendant was indicted for murder in the first degree for killing one Green Dodson, and one James Shoat was included in said indictment, charged with being present, aiding and assisting defendant. The trial on said indictment resulted in the acquittal of Shoat and the conviction of defendant for murder in the second degree, his punishment being assessed at imprisonment in the penitentiary for twenty years. From this judgment defendant has appealed, and seeks a reversal on the alleged ground that there is no evidence to sustain the verdict, that the court erred in excluding a qualified juror from composing one of the panel, and also erred in giving and refusing instructions.

Dodson, the deceased, was killed by defendant on

the thirtieth of July, 1887, at a picnic and dance of col-
ored people on the premises of one Dick Green in Saline
county.    The evidence on the part of the state tends to
show the following facts, viz :    That defendant came to
the place of the picnic and dance, about dark of the day
of the homicide ; that a platform for dancing had been
erected ;   that   quite  a  large  number  of  persons  had
assembled ;   that  defendant,  soon  after  his  arrival,
created   some   disturbance,   and  was  approached  and
quieted by the deceased ; that thereafter, defendant said
to a girl or woman on the dancing platform, " God damn
it, if you don't want to dance with me, you can go to
hell ! " ; that thereupon one Thomas, the brother of said
woman, approached defendant and told him he must not
curse that woman ; that some words passed, defendant
drew his knife, and started towards Thomas, when Dod-
son, the deceased, stepped up and said, " Boys, we don't
want any fuss here," and addressing defendant said,
" John, there is no use of this, come with me," taking
hold of him at the same time, and defendant taking
hold of Dodson, and thus both of them walked off from
ten to twenty feet distant from the platform.  What was
further said between the two as they went does not
appear, but it does appear that Dodson's object was
to pacify Jackson and that Jackson was cursing and
abusing the crowd, around them.    There is no evidence
of any hostile demonstration on the part of deceased to
defendant, further than that he had hold of him to quiet
him.    It appears that while deceased and defendant had
hold of each other,  Dick  Green  went  up to them and
tried  to  pull  Dodson  loose,  and  on  discovering  that
defendant had a knife in his hand, he let Dodson go,
and asked defendant's brother to try and get the knife
from him ;  that the  brother  went  near  the  parties,
returned and said to Green he could do nothing with
him, and " that you will have to knock him down ;" that
Dick  Green  aimed  a  blow  at  defendant's  head  with a
stick and struck him on the shoulder,  and while aiming

to strike another blow the stick was caught by Shote, who drew and snapped a pistol at Green. The evidence shows that defendant struck deceased three licks with a knife or razor, one of which severed the jugular vein killing Dodson instantly. It tends to show that defendant made two of the three licks, and was in the act of making the third, before he was struck by Dick Green with the stick.

Witness Galloway, in his evidence, states that defendant struck deceased three licks with a knife or razor; that the last lick he struck him, " he kind of drawed him up to him with his left hand and struck around him with his knife or razor, with his right arm around his neck, right across the jugular vein. I think he struck two licks before Dick Green struck him with the club or stick, and after he was struck he struck the third lick." He further testified, that defendant was in the act of striking deceased the third lick, when Green struck him with the club ; that he was positive defendant had struck deceased before Green struck him.

Witness Moulton testified positively that defendant cut the deceased, before he, defendant, was struck. This witness further testified that deceased had taken defendant and quieted him twice before, and this time had him about quieted and Jim Shote came up and said either " step to him or stick to him, that he would back him." Then John Jackson struck at Dodson three times, and the last time he struck around that way (indicating) and Dodson fell back on his elbow.

Green Adams testified that "he (defendant) pulled him (the deceased) to him and let the knife into his neck." Immediately after being cut the deceased fell down and died ; that defendant then said, " God damn you, rise and come again," and while flourishing his knife cried out, " Where is John Thomas, God damn him, I'll kill him too."

On the part of the defense, the defendant Jackson testified that he was at the picnic ; that deceased Dodson

came up to him and he and Dodson went off the plat-
form together ; that when they got about ten steps from
the platform, Dick Green come running up with a club,
and tried to pull Green Dodson loose from me, and he
could not. "I then said to Dodson, 'let me loose,
Green,' and he let me loose and Dick Green struck me
with the stick, and my aim was to get away from there.
When I saw Dick Green coming with a stick I heard
some one say ' knock him down.' I got two other licks
about that time. Green Dodson, deceased, and myself
were as good friends as anybody on earth. I did not try
to hurt him or to kill him in that scuffle. I had a knife
in my hand ; I had it for a right smart while in my
hand ; I took it out to cut a chew of tobacco or some-
thing. I did not pull Dodson up close to me and put
my arms around his neck. If I struck Dodson it was
when I got this blow, and I was going to get away. I
don't know who I struck ; I might have struck him ; I
don't know. I got to the picnic about sundown. One
lick I got nearly knocked me down. At the time I got
the lick, Dodson was holding me, and when Dick Green
struck me, Dodson and me fell apart, and I got
away."

The contention of defendant's counsel, that the court
erred in refusing to sustain a demurrer to the evidence
and direct an acquittal, has rendered necessary the above
review of the evidence, and in the light of the facts
which it discloses, we have no hesitancy in saying that
there is no ground for the contention.

It is next insisted, in the motion for new trial, that
the court erred in excluding from the jury one David-
son, who, it is alleged in the motion, had been duly
summoned as a juror, and who upon his examination
was shown to be legally qualified, and who was excluded
and excused from serving on the jury without any legal
reason therefor, and against the objection of defendant.
In case of *State v. Ward*, 74 Mo. 253, it is held that a
defendant, to avail himself of any error or irregularity

in the selection and empaneling of a jury, must make timely objection. If he delay till after verdict it will be too late, and even when taken in time such objections will be disregarded, unless it appear that defendant has suffered some prejudice. The record in this case wholly fails to show what examination or whether any examination was made concerning the competency of said Davidson, or the circumstances under which he was excused, or that any objection was made at the time he was excused, or exception then saved to the action of the court. The objection only appears after verdict in the motion for new trial for the first time, and there is no pretense that the twelve jurors who tried the case were not competent and qualified in every respect.

The court instructed the jury as to murder in the first and second degrees, and as to manslaughter in the fourth degree. There was evidence tending to show that defendant drew deceased to him, threw his arm around his neck and cut his throat, and the circumstances attending the cutting justified the court in giving the instructions as to murder in the first and second degrees. The evidence of defendant on his own behalf justified the court in giving as it did an instruction for manslaughter in the fourth degree, and did not require the court to instruct either as to manslaughter in the second or third degrees.

Defendant asked eight instructions of which the court gave six and refused two. While defendant excepted to the action of the court in refusing the two instructions, no point on the exception is made in the brief of counsel, and it is sufficient to say of them, that the six that were given presented the case to the jury in the most favorable light for defendant and the two refused instructions were repetitions of what was contained in some of those that were given.

Finding no error justifying an interference with the judgment it is hereby affirmed. All concur except RAY, J., absent.