State v. Furgerson.

*Sherwood, P. J.,* and *Burgess, J.,* concur.

## THE STATE v. FURGERSON, Appellant.

### Division Two, May 21, 1901.

1. **Murder:** INDICTMENT: ESSENTIAL AVERMENTS. An indictment for murder in the first degree, which charges that the assault, battery and striking were feloniously made, but which fails to allege that the *wounding* was done feloniously, will, nevertheless, be held good if all the essential averments are so connected as to show that the homicidal act was feloniously done.

2. ———: ———: DESCRIPTION OF WOUND: REPUGNANCY. An indictment for murder need not describe the wound nor the part of the body upon which the wound was inflicted; and repugnancy in describing it will not vitiate the indictment.

3. ———: ———: IMPLICATION: ASSAULT: INSTRUMENT USED. No necessary allegation in an indictment can be supplied by intendment or implication; and a count of an indictment for murder by means of an assault with a deadly weapon, which fails to allege that the assault was committed "with" such weapon, *held,* bad, since without the word "with" there is no connection between the instrument of death and the assault. (State v. Rector, 126 Mo. 328, followed.)

4. **Witness:** IMPROPER QUESTION: UNANSWERED. When a witness is asked an improper question but is dismissed before attempting to answer it, the mere asking of the improper question will not work a reversal.

5. **Murder, First Degree:** INSTRUCTION. Where the evidence clearly shows that the crime committed is either murder in the first degree or no offense at all, no instruction on a lower grade of murder should be given.

6. **Instruction**: ERRONEOUS DEFINITION: HARMLESS ERROR. Where the evidence shows no justification or provocation for homicide, and nothing which could reduce the offense from murder in the first degree to a lower grade, an erroneous definition, in an instruction, of the word "deliberately" will be regarded as harmless error.

7. **Failure to Instruct**: NO REQUEST. No error is committed in failing to instruct in regard to the character of defendant when no request for such instructions is made, and the attention of the court is not called in time to its failure to instruct upon the law of the case.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

AFFIRMED.

*O. G. Williams, W. G. Callison* and *W. C. Irwin* for appellant.

(1)  The first count in the indictment is worthless for the reasons:  First.  It does not allege that the mortal wound, the homicidal act, was "feloniously," etc., given.  State v. Green, 111 Mo. 588; State v. Herrell, 97 Mo. 108; State v. Emerich, 87 Mo. 115; State v. Feaster, 25 Mo. 327; State v. Fairlamb, 121 Mo. 155; State v. Deffenbacher, 51 Mo. 27; State v. Murdock, 9 Mo. 740; State v. Clayton, 100 Mo. 519; State v. Rice, 149 Mo. 466.  Second.  It is bad on account of repugnancy.  The indictment charges that defendant "struck and beat" deceased upon the "body," "crushing, fracturing and breaking his skull."  This is a physical impossibility.  2 Am. and Eng. Ency. of Law (1 Ed.), p. 440, and note; State v. Draper, 65 Mo. 338.  State v. Jones, 20 Mo. 60; State v. Gray, 21 Mo. 492; State v. Gibson, 111 Mo. 100; Sanchez v. People, 22 N. Y. 147; 2 Bishops's New Crim. Prac. (4 Ed.), sec. 522, et seq.  (2)  The second count of the indictment is

bad for its failure to allege what the assault charged was made "with," or that it was made "with" anything, being the same defect as was in the former indictment, which this court held to be bad on a former appeal in this case. State v. Furgerson, 152 Mo. 97. (3) This indictment, as a whole, is a nullity for the reason that the wife of defendant was subpoenaed by the State as a witness before the grand jury, and was used as one of the procuring causes of the indictment. R. S. 1899, sec. 2367; State v. Berlin, 42 Mo. 577. (4) The failure of the court to instruct on all the law in the case was properly objected and excepted to, and the request for it to so instruct was both correct and timely. State v. Cantlin, 118 Mo. 111; State v. Waters, 156 Mo. 134. (5) The court should have instructed that proof of defendant's bad character went to his credibility as a witness, only, and was no evidence of his guilt. State v. Weeden, 133 Mo. 84.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Under the rule, as adopted by our courts, the wound need not be located as described, and that part of the body upon which the mortal wound was inflicted need not be set out in an indictment for murder. State v. Henson, 81 Mo. 384; State v. Sanders, 76 Mo. 35; State v. Blaw, 69 Mo. 317; State v. Green, 111 Mo. 585; State v. Snell, 78 Mo. 240; State v. Ramsey, 82 Mo. 133; State v. Waller, 88 Mo. 402; State v. Edmundson, 64 Mo. 400; Cordell v. State, 22 Ind. 1; Dias v. People, 7 Black. 20. (2) It is a well-settled rule that an instruction for a lower degree of the crime should not be given unless there be evidence to warrant it. State v. Henson, 106 Mo. 66; State v. Sneed, 91 Mo. 552; State v. Collins, 86 Mo. 245; State v. Umble, 115 Mo. 452; State v. Dickson,

78 Mo. 438.   Nor is the court required to give, nor should it give, an instruction on murder in the second degree, unless warranted by the evidence.   State v. Umble, 115 Mo. 452; State v. Hopper, 71 Mo. 425.   (3)   Defendant can not claim that the court erred in failing to define something that did not exist, and which was incapable of definition.   The court might have instructed the jury that, as a matter of law, there was "no just cause or provocation" for the killing, but this would have availed defendant nothing, hence, he was not prejudiced.   (4) Even though the court should have instructed that proof of defendant's bad character went to his credibility as a witness, only, and was not evidence of his guilt, he can not at this time complain for the reason that no such instruction was asked of the court at the proper time.   The question being a collateral one, it was not error to fail to instruct thereupon, unless specifically asked to do so.

BURGESS, J.—From a second conviction of murder in the first degree and the imposition of the sentence of death for having killed and murdered one Stephen G. Wilson, at Grundy county, on the twenty-fifth day of March, 1897, defendant appeals.

The case was before this court on a former occasion (State v. Furgerson, 152 Mo. 92), the indictment held to be invalid, and the judgment reversed and the cause remanded.   Subsequently, defendant was re-indicted and again convicted.

The facts and circumstances as they appeared upon the last trial were substantially as upon the last preceding one, the only difference being with respect to matters unnecessary to state now, but if thought to be material to a determination of the case, will be noticed in the course of the opinion.

· The indictment, leaving off the formal parts, is as follows: "The grand jurors for the State of Missouri, and from the

body of Grundy county, duly impanelled, sworn and charged upon their oaths, present and charge that one William Furgerson, on the twenty-fifth day of March, 1897, at Grundy county, Missouri, in and upon one Stephen G. Wilson, then and there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a certain ax, a deadly weapon, by him, the said William Furgerson, held in his hands, the said William Furgerson, did then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, forcibly strike and beat the said Stephen G. Wilson, in and upon the body of the said Stephen G. Wilson, crushing, fracturing and breaking the skull of the said Stephen G. Wilson, giving to him, the said Stephen G. Wilson, a mortal wound, of which said mortal wound he, the said Stephen G. Wilson, did then and there instantly die.   And so the grand jurors aforesaid, upon their oaths aforesaid, do say the said William Furgerson, him the said Stephen G. Wilson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did kill and murder; against the peace and dignity of the State.

"And the grand jurors aforesaid, impanelled as aforesaid, upon their oaths aforesaid, do further charge and present that the said William Furgerson, on the said twenty-fifth day of March, 1897, at Grundy county, Missouri, in and upon the body of the said Stephen G. Wilson, then and there being, feloniously, willfullly, deliberately, premeditatedly, on purpose and of his malice aforethought, did make an assault, and that he, the said William Furgerson, some heavy instrument or deadly weapon to these jurors unknown, which said instrument or deadly weapon he, the said William Furgerson, in his hand, then and there held, then and there feloniously, willfully, deliberately, premeditately, on purpose and of his mal-

ice aforethought, did forcibly strike and beat the said Stephen G. Wilson, in and upon the body of the said Stephen G. Wilson, crushing, fracturing and breaking the skull of the said Stephen G. Wilson, giving to him, the said Stephen G. Wilson, a mortal wound, of which said mortal wound he, the said Stephen G. Wilson, did then and there instantly die; and so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said William Furgerson, him the said Stephen G. Wilson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did kill and murder; against the peace and dignity of the State."

The first count in the indictment is assailed upon the ground that the homicidal act, the mortal stroke with the ax, is not alleged to have been done feloniously. That while the assault, battery and striking are alleged to have been feloniously made, it is not alleged that the *wounding* was done feloniously.

State v. Green, 111 Mo. 588, is relied upon as sustaining that contention, but in that case the indictment was held bad upon the ground that the words "thereby and by thus striking" indicated that a striking and wounding had been previously alleged, where such was not the case, but this essential averment was entirely omitted. State v. Herrell, 97 Mo. 105, is also relied upon by defendant. In that case it was said: "There are authorities, however, for holding that an indictment will be made good, notwithstanding it fails to allege that the wound was feloniously, etc., given, provided that the words feloniously, etc., previously alleged, are connected with the mortal stroke by the words 'then and there,' for in such case, the words feloniously, etc., will run through the subsequent allegations and thus connect them with the mortal stroke to which they are essential, as already seen. [1 East P. C. 346; 2

Vol 162 mo—43

Hale P. C. 184; State v. Lakey, 65 Mo. 217; State v. Steeley, 65 Mo. 218; State v. Sides, 64 Mo. 383.]"

In the case at bar the essential averments are properly connected by the following language: " . . . . one William Furgerson on the twenty-fifth day of March, 1897, at Grundy county, Missouri, in and upon one Stephen G. Wilson, then and there being, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, did make an assault, and with a certain ax, a deadly weapon, by him, the said William Furgerson, held in his hands, the said William Furgerson did then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, forcibly strike and beat the said Stephen G. Wilson," etc.

State v. Rice, 149 Mo. 461, is another authority relied upon by defendant, but in that case the indictment was held good, the court holding that it would have been better pleading, however, if the word "feloniously" had been repeated just before the words describing the giving of the mortal wound. But as that word was necessarily and logically connected with those describing the giving of the mortal shot, by the use of the words "then and there," the indictment was not bad for that reason.

The first count of the indictment is in all essential particulars like the forms found in 3 Chitty on Criminal Law, pages 750 and 752, which are followed in 1 Wharton's Precedents, 117. It is in almost the exact words of the form laid down by Kelley in his work on Criminal Law and Practice, p. 309. It contains all necessary averments, including the averment that the "homicidal act was feloniously done," and is, we think, good.

It is also asserted that said count is bad on account of repugnancy, in that it charges that defendant "struck and beat" deceased on the "body," "crushing, fracturing and breaking

his skull," which is a physical impossibility. In State v. Anderson, 98 Mo. 461, an indictment for murder which alleged that the defendant with a certain club gave the deceased one mortal wound on the "head and body" was not for such repugnancy fatally defective under the provisions of the statute of jeofails. [R. S. 1879, sec. 1821; R. S. 1899, sec. 2535.]

It is well settled in this State that the wound need not be described, nor the part of the body upon which the mortal wound was inflicted described in an indictment for murder. [State v. Henson, 81 Mo. 384; State v. Edmundson, 64 Mo. 398; State v. Ramsey, 82 Mo. 133; State v. Waller, 88 Mo. 402.] And if not necessary to describe it, it must need follow, that repugnancy in describing it, will not vitiate the indictment.

The second count in the indictment is bad because of its failure to allege what the assault was made "with," as it is only by implication that it can be said that it was with an ax. No necessary allegation in an indictment can be supplied by intendment or implication, and that it was necessary in this case that the indictment should allege that the assault was committed with an ax, is too clear for discussion.

In passing upon an indictment for murder in State v. Rector, 126 Mo. 328; SHERWOOD, J., said: "The indictment in this cause is clearly bad .... because the word 'with,' being omitted therefrom, there is no allegation showing with what the alleged homicidal act was done. In criminal prosecutions, everything constituting the offense must be set forth with certainty and clearness, nothing must be left to be implied. This is true of all felonies. Hawkins says: 'That in an indictment nothing material shall be taken by intendment of implication.' [2 Hawk. P. C., ch. 25, sec. 60.] If an essential word be dropped, it is fatal. [Wharton on Crim. Plead. and Prac. (9 Ed.), sec. 275, and cases cited.]"

As was said in the former opinion in this case, "Without

the word 'with,' there is no averment that the assault was committed with an ax, and it is only by implication that it can be so held. Without the word 'with,' there is no connection between the instrument of death and the assault." [State v. Furgerson, 152 Mo. 92.]

There is no merit in the contention that the indictment is bad upon the ground that defendant's wife was summoned before the grand jury by the State, as it does not appear from the record that such was the case; besides, if she had been so summoned, the question could not be raised for the first time in this court.

Mrs. Furgerson, the wife of defendant, was introduced as a witness in his behalf, and, having stated in answer to a question propounded by defendant that she was before the grand jury, on cross-examination by the State over the objection of defendant, she was asked this question: "Did you say before the grand jury, 'Bill come home the night of the murder somewhere about nine o'clock,' " and this is assigned for error. But before the question was answered the witness was dismissed, and while the question was improper because of the provisions of sections 4070 and 4071, Revised Statutes 1889, defendant could not have been prejudiced by the mere asking of the question. It might have been otherwise had she answered and testified to something prejudicial to defendant, but as she did not do so the judgment should not be reversed upon that ground.

Under the evidence, defendant was either guilty of murder in the first degree, or of no offense at all. Deceased was killed under circumstances which tended strongly to show that it was done deliberately, premeditatedly, and with malice. He was called from his place of business at a late hour in the night, and, within a few minutes thereafter, was found dead with three mortal wounds upon his head, produced by some

deadly weapon which the evidence tended to show was an ax, and that defendant was the perpetrator of the crime. Under these circumstances the court would not have been justified in instructing for murder in the second degree, or any other grade of offense less than murder in the first degree, and it committed no error in failing to so do. [State v. Hopper, 71 Mo. 425; State v. Fairlamb, 121 Mo. 137; State v. Umble, 115 Mo. 452.]

In the State's second instruction, "deliberately" is defined as meaning "done in a cool state of the blood; it does not mean brooded over or considered or reflected on for a week, or a day or an hour, but it does mean an intention to kill, executed by a party not under the influence of a violent passion suddenly aroused, and the passion here referred to is that only which is produced by what the law recognizes as a just cause of provocation."

The defense was an alibi.

There was no evidence whatever tending to show either justification or provocation for the homicide, or that it was done in the heat of passion, and while in defining "deliberately," the definition given is inaccurate in that it does not go far enough, but omits an essential element of deliberation, that is, that the homicide must have been committed in the furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose (State v. Wieners, 66 Mo. 13; State v. Avery, 113 Mo. 475; State v. Andrew, 76 Mo. 104; State v. Ward, 74 Mo. 253; State v. Kotovsky, 74 Mo. 249; State v. Ellis, 74 Mo. 219; State v. Stephens, 96 Mo. 638; State v. Fairlamb, 121 Mo. 137), yet, as was said in State v. Ward, supra, "though not in accord with recent decisions of this court, this instruction could not have worked the defendant any hurt, since there was no provocation at all, either lawful or otherwise, nothing of that nature which

could reduce the offense from murder in the first degree to some lower grade of homicide. For this reason the error was harmless." The same rule is announced in the recent case of State v. Tettaton, 159 Mo. 354.

It is asserted that the court erred in failing to instruct the jury that evidence of defendant's bad character went only to his credibility as a witness and was not evidence of his guilt. But no such evidence was adduced, and of course no error was committed in failing to instruct in regard thereto, but if there had been, the court could not be convicted of error in failing to instruct with respect to it in the absence of a request to do so by defendant, or of its attention being called in time to its failure to instruct upon the law of the case. [State v. Cantlin, 118 Mo. 100; State v. Waters, 156 Mo. 132.]

There was, it is true, evidence that defendant had made many contradictory and incriminating statements with respect to matters bearing upon the homicide, and in regard to such statements defendant asked the court to instruct the jury that they could only be considered in so far as they affected the credibility of the defendant, but this was not a request to instruct that evidence of defendant's bad character went only to his credibility as a witness, and was not evidence of his guilt.

Moreover, the instruction as asked was wrong in principle, because any and all statements shown to have been made by defendant tending to show his connection with the homicide were admissible, however inconsistent they may have been, and regardless of any tendency that they may have had to discredit him as a witness before the jury. Such evidence was not introduced for the purpose of impeaching or discrediting defendant as a witness, but was for the direct purpose of showing that he committed the crime, and does not come within the rule contended for by defendant.

State v. Furgerson.

The eleventh, thirteenth and nineteenth instructions given at the instance of defendant in regard to statements and admissions proven to have been made by him, tending to show his guilt, were very fair to him, and all that he could have desired.

There was, therefore, no error in refusing other instructions asked by defendant on this feature of the case.

There is no conflict between the ninth instruction given on the part of the State and the tenth given on the part of the defendant, as contended by him. This contention is not, therefore, well grounded.

The first, third, fourth and tenth instructions given in behalf of the State, are also complained of, but, we think, without any good ground therefor. The instructions seem to be free from serious objection, and very fair to the defendant.

Both counts of the indictment relate to the same transaction and charge but one offense, that is, murder of the first degree. The instructions were for murder in that degree, and in response thereto the jury found defendant guilty of that offense, and although the second count is bad, the first is good, and the latter will sustain the verdict. [State v. Blan, 69 Mo. 317; State v. Scott, 39 Mo. 424.]

The weight of the evidence was for the consideration of the jury; the defendant has been twice found guilty of the offense; and both verdicts met with the approval of the court, and under such circumstances we would be slow to conclude that there was not sufficient evidence to support the verdict.

Finding no reversible error in the record, we affirm the judgment and direct the sentence to be executed.

*Sherwood, P. J.,* and *Gantt, J.,* concur.